IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOLU PLASTICS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VALU ENGINEERING, INC., et al., | : | |
| Defendants. | : | No. 04-4325 |
| | : | |
| | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                             **October 12, 2004**

Plaintiff Nolu Plastics, Inc. ("Nolu") brings this action to confirm an interim arbitration order issued on March 2, 2004 and to confirm in part and vacate in part an arbitration award rendered on July 15, 2004. Defendants Valu Engineering, Inc. ("Valu"), Valu Made, Inc., and Stuart J. Ledingham oppose Plaintiff's petition and have filed a cross-petition to remand the arbitration award in part. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's petition, and denies Defendants' cross-petition.

**I.    BACKGROUND**

This action arose from the merger of Nolu and Valu, two closely-held non-public entities that manufactured and sold industrial parts and equipment. On October 31, 1999, Nolu and Valu combined their assets and began operating as Solus Industrial Innovations, LLC ("Solus"). (Pl.'s Pet. to Confirm in Part & Vacate in Part Arbitration Award & Confirm Stand-Still Order Ex. A at 1 (Arbitration Award) [hereinafter Pl.'s Pet.].) At the time Solus was formed, Christopher Mellor

1

was the principal shareholder of Nolu and Stuart J. Ledingham was the principal shareholder of Valu.[1] (*Id.*) Pursuant to the merger, the parties signed an Operating Agreement and a Contribution Agreement. (*Id.* Ex. A at 2.) The Operating Agreement set out a structure for the corporate governance of Solus and included a buy-sell procedure by which Valu and Nolu could end their business relationship. (*Id.* Ex. C (Operating Agreement).) The Contribution Agreement memorialized the parties' contribution of assets to Solus. (*Id.* Ex. D (Contribution Agreement).)

Thereafter, a dispute developed between the parties concerning, inter alia, the assets contributed by Nolu to Solus under the Contribution Agreement and the validity of Nolu's efforts to trigger the buy-sell provision contained in the Operating Agreement. The parties submitted their respective claims to the American Arbitration Association pursuant to an arbitration provision set forth in Section 10.10 of the Contribution Agreement (*id.*), and selected the Honorable Arlin Adams ("the Arbitrator") as arbitrator (*id.* Ex. A, at 1). On March 2, 2004, the Arbitrator entered an interim order ("the Interim Order") enjoining Ledingham and Valu from "engaging in conduct or spending Solus's funds outside of the ordinary course of business." (*Id.* Ex. B (Interim Order).)

On July 15, 2004, the Arbitrator issued an award and order ("the Award") in which he found that each party had violated various terms of Solus's governing agreements. (*Id.* Ex. A at 16-19.) Paragraphs three and seven of the Award are relevant to the instant petition and cross-petition. Paragraph seven provides:

> Ledingham breached the provisions of the Operating Agreement governing the buy and sell arrangement. Ledingham will be given 30 days from the day of this opinion and order to agree in writing to pay to NOLU, as provided in §9.3 as in the Operating Agreement, $7.0 million for NOLU's share of Solus in exchange for receiving from the Mellor interest any and all documents necessary to transfer all their interest in

---

[1]Mellor died on November 26, 2000. (Pl.'s Pet. Ex. A at 2.)

2

> Solus. If Ledingham does not exercise the opportunity to purchase NOLU's interest within the 30-day period, Mellor shall have the right to purchase [Valu's] interest in [Solus]² for a consideration of $7.0 million, in exchange for receiving from Ledingham any and all papers necessary to convey Ledingham's interest in Solus and to sign all resignations, releases and other documents necessary to effectuate a transfer. The payment of the purchase price, if any is to take place, shall be consistent with the terms set forth in Paragraph 9 of the Operation Agreement. The sums referred to in this paragraph are to be paid, if at all, after the payments set forth in the prior paragraphs of this Award and Order have been paid.

(*Id.* Ex. A at 17-18.) Paragraph three provides:

> NOLU must pay to Solus One Million Twelve Thousand Nine Hundred Forty Nine Dollars and Zero Cents ($1,012,949.00), the sum which the Mellor interests obtained as a result of the payments on the life insurance policy on Mellor's life.

(*Id.* Ex. A at 16.)

On August 12, 2004, counsel for Ledingham and Valu timely notified the Vice President of Nolu that Ledingham would not be exercising his option under paragraph seven to purchase Nolu's interest in Solus. (*Id.* Ex. H (Letter of Aug. 12, 2004).) On September 13, 2004, Nolu notified Ledingham and Valu that Nolu had decided to exercise its option to purchase Valu's interest in Solus, and scheduled the closing of that transaction for September 24, 2004. (*Id.* Ex. I (Letter of Sept. 13, 2004).) Ledingham and Valu, however, failed to appear at the scheduled closing and now contend that the Award does not require them to complete the stock purchase transaction at this time.

## II.   STANDARD OF REVIEW

A court's function in confirming or vacating a commercial arbitration award is severely

---

²The Award actually states that "Mellor shall have the right to purchase Ledingham's interest in NOLU . . . ." (Pl.'s Pet. Ex. A at 17.) Defendants contend, and Plaintiff has not disputed, that the Arbitrator was asked to clarify this language on August 18, 2004 and that he so clarified the phrase to read "Mellor shall have the right to purchase Valu's interest in Solus . . . ." (Defs.' Mem. of Law in Support of Cross-Pet. to Remand in Part Arbitration Award at 7 n.2.)

limited. *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., et al.,* 868 F.2d 52, 56 (3d Cir. 1989) (citation and quotation omitted). The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2004), governs judicial review of arbitration awards. Under § 9 of the Federal Arbitration Act, if the parties to an arbitration agree that a court judgment shall be entered upon an arbitration award, "then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9 (emphasis added). An award may be vacated only where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing or in refusing to hear evidence pertinent and material to the controversy; or (4) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10. An award may be modified or corrected only where: (1) there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them; or (3) the award is imperfect in a matter of form not affecting the merits of the controversy. 9 U.S.C. § 11.

### III.    DISCUSSION

Presently before this Court is: (1) Plaintiff's petition to confirm paragraph seven of the Award, vacate paragraph three of the Award, and confirm the Interim Order; and (2) Defendants' cross-petition to remand paragraph seven of the Award. For the following reasons, the Court denies Defendants' cross-petition, confirms paragraph seven as modified herein, and denies the remainder

of Plaintiff's petition.

    **A.**    **Paragraph Seven of the Award**

Plaintiff asks this Court to confirm paragraph seven of the Arbitrator's July 15, 2004 Award. In response, Defendants have not moved to vacate, modify, or correct that paragraph, but rather have cross-petitioned to remand it to the Arbitrator for clarification. Although neither § 10 or § 11 of the Federal Arbitration Act explicitly authorizes this type of remand, the Third Circuit has held that a court may remand a case for further arbitration in "certain limited circumstances, such as when an award is incomplete or ambiguous." *United Steelworkers of Am. v. Adbill Mgmt. Corp.*, 754 F.2d 138, 141 (3d Cir. 1985) (citation omitted). Defendants accordingly argue that the Award is ambiguous and should be remanded to clarify three alleged ambiguities in paragraph seven.

    1.    <u>The No Setoff Provision</u>

Defendants contend that paragraph seven of the Award is ambiguous because it states that the sums from any buy-sell transaction "are to be paid, if at all, after the payments set forth in the prior paragraphs of this Award and Order have been paid." (Pl.'s Pet. Ex. A at 18.) This portion of paragraph seven (which Defendants have termed the "No Setoff Provision") is not ambiguous. The No Setoff Provision clearly requires Nolu and Ledingham to pay money to Solus before making any payments in connection with the stock purchase transaction. While Defendants complain that Plaintiff has failed to make those payments, Plaintiff's failure to abide by the No Setoff Provision does not make its language any less clear. Defendants' complaint is with the substance of Plaintiff's performance, not with any ambiguity in the provision governing that performance. As that provision can only be interpreted in one fashion, remand to the Arbitrator on this issue would be

inappropriate.[3] *See Adbill*, 754 F.2d at 142 (holding district court's remand to arbitrator improper because award was unambiguous).

2. <u>The Event of Default Letter</u>

On September 13, 2004, approximately two months after the Award was issued, Solus's lending bank sent a letter to Ledingham regarding a pre-existing loan. The letter stated that "any change in the ownership interests held with respect to [Solus], or any other change in [Solus's] management that causes a material adverse change in [Solus's] condition or affairs, shall constitute an Event of Default under the Loan Agreement and the other Loan Documents." (*See* Defs.' Mem. of Law in Support of Cross-Pet. to Remand in Part Arbitration Award Ex. B (Letter to Ledingham from Wilmington Trust Company).) On the basis of this letter, Defendants suggest that the closing of the buy-sell transaction could constitute an "event of default." Therefore, according to Defendants, a new contingency has arisen that the Arbitrator did not anticipate and that creates a latent ambiguity in paragraph seven.

This argument is meritless for two reasons. First, although the Third Circuit has acknowledged that unanticipated contingencies can create latent ambiguities in arbitration awards,

---

[3] Importantly, although the No Setoff Provision is unambiguous, Defendants cannot rely on it as a convenient means of avoiding their own obligations under paragraph seven. During an October 5, 2004 hearing before this Court, Defendants conceded that they have no personal stake in the enforcement of the No Setoff Provision against Nolu, given that they have declined to purchase Nolu's interest in Solus and no longer stand to profit from any money paid into Solus. Defendants, therefore, lack standing to demand that the No Setoff Provision be enforced. *See Nat'l R.R. Passenger Corp. v. Pa. Public Util. Comm'n*, 342 F.3d 242, 254 (3d Cir. 2003) ("To meet the constitutional requirements for standing, [a party] must show (1) it suffered an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that it is likely that the injury will be redressed by a favorable decision." (citation omitted).)

*see Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 333 (3d Cir. 1999), it has only done so where those contingencies "render[ed] the remedy ordered unenforceable in the absence of clarification." *Id.* (holding that arbitration award directing employee to complete counseling sessions with specific doctor became ambiguous when doctor refused to see employee and employee could no longer comply with award); *see also Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) ("[I]f an arbitration award directed the transfer of real property, and the district court could ascertain that such property was no longer in the possession of the party directed to transfer it, the remedy would be unenforceable and hence ambiguous."). In this case, paragraph seven is not "unenforceable in the absence of clarification," for the bank's representation that certain activities shall result in an event of default does not prevent the parties from conducting a closing.[4] In other words, the bank's mere suggestions about what may occur following the closing do not hinder either party's ability to move forward. As the bank's announcement does not make compliance with paragraph seven impossible, it is not the type of unanticipated contingency that can create a latent ambiguity.

Moreover, the record suggests that Arbitrator did anticipate this contingency. Prior to the issuance of the Award, Valu submitted a post-hearing brief to the Arbitrator describing its concern that Solus's bank would declare an event of default upon the sale of either Nolu's or Valu's interest in Solus:

Here, as Ledingham testified, neither Nolu's nor Valu's interest in Solus may be sold

---

[4]Indeed, during the October 5, 2004 hearing before this Court, the current Vice President of Nolu, Robert B. Pincus, testified that he has been engaged in negotiations with Solus's bank regarding the default issue. Pincus further testified that, should Nolu close on the stock transaction, Nolu plans to continue to negotiate with that bank and will refinance if necessary.

> without the prior consent of Wilmington Trust of Pennsylvania (the "Bank") given the Forbearance Agreement. Accordingly, absent the consent of the Bank, any transfer of membership interest in Solus pursuant to Section 10 of the Operating Agreement may not be affected without triggering a default under the Forbearance Agreement.

Claimant's Resp. to Resp'ts' Post Hr'g Br. at 7, *Valu Eng'g, Inc., et al.* vs. *Nolu Plastics, Inc., et al.*, AAA Case No. 14 Y 489 00118 01 (2004) (Adams, Arb.). Given Valu's explicit representations to the Arbitrator, Defendants cannot in good faith argue that the Arbitrator was unaware of a potential default scenario when he rendered the Award.

      3.    <u>The "Mellor" Reference</u>

Finally, Defendants aver that paragraph seven is ambiguous because it assigns the right to purchase Valu's interest in Solus to "Mellor" rather than to "Nolu." The third sentence of paragraph seven states, in pertinent part, that "[i]f Ledingham does not exercise the opportunity to purchase NOLU's interest within the 30-day period, *Mellor* shall have the right to purchase [Valu's] interest in [Solus]." (Pl.'s Pet. Ex. A at 17 (emphasis added).) Initially, the Arbitrator defines "Mellor" as Christopher Mellor, the former principal stockholder of Nolu. (*Id.* Ex. A at 1.) The Arbitrator cannot possibly have expected Mellor to exercise the purchase right articulated in paragraph seven, however, for the Arbitrator knew that Mellor had passed away on November 26, 2000. (*Id.* Ex. A at 2.) A question thus remains as to what the Arbitrator meant when he assigned a right of purchase to "Mellor."

The remainder of the Award amply clarifies that the Arbitrator intended to assign this right to either "Nolu" as a company or to the current representative(s) of Nolu. Section 10 of the Operating Agreement grants the ability to exercise the buy-sell right to "Nolu" and "Valu" as

entities. (*Id.* Ex. C.) The Arbitrator recognized and understood that the Operating Agreement gave "Nolu" this authority. (*Id.* Ex. A at 15 ("On October 9, 2003, *NOLU* triggered the buy-sell obligation set forth in Section 10 of the Operation Agreement with an offer to buy Ledingham's interest in Solus for $7 million.") (emphasis added).) Rather than being an ambiguity, then, paragraph seven's reference to "Mellor" instead of "Nolu" is better characterized as an imperfection in form justifying modification or correction. *See* 9 U.S.C. § 11. "[An] award may be confirmed and need not be remanded to the arbitrator, where the true intent of the arbitrator is apparent . . . . Remand should not be granted where the court can resolve any alleged ambiguities in the award by modification, pursuant to 9 U.S.C. § 11." *Fischer v. CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985) (citations omitted) (modifying allegedly ambiguous portion of arbitration award pursuant to 9 U.S.C. § 11 and then confirming award as modified); *see also Colonial Penn*, 943 F.2d at 334 ("Of course, remand is to be used sparingly. Arbitrators are not as amenable to remand of a case for retrial in the same manner as are trial judges."). In this instance, the true intent of the Arbitrator is clear and this Court may make the appropriate corrections without remanding the case.

Accordingly, the Court exercises its authority under 9 U.S.C. § 11 and modifies the third sentence of paragraph seven by inserting the phrase "or NOLU" alongside the word "Mellor." The sentence now reads as follows:

> If Ledingham does not exercise the opportunity to purchase NOLU's interest within the 30-day period, Mellor or NOLU shall have the right to purchase [Valu's] interest in [Solus] for a consideration of $7.0 million, in exchange for receiving from Ledingham any and all papers necessary to convey Ledingham's interest in Solus and to sign all resignations, releases and other documents necessary to effectuate a transfer.

In conclusion, paragraph seven of the Award is confirmed as modified, Plaintiff's petition to confirm paragraph seven is granted, and Defendants' cross-petition to remand is denied.

### B.  Paragraph Three of the Award

Plaintiff also petitions this Court to vacate paragraph three of the Arbitrator's July 15, 2004 award, which directs Nolu to pay $1,012,949 to Solus, "the sum which the Mellor interests obtained as a result of the payments on the life insurance policy on Mellor's life." (Pl.'s Pet. Ex. A at 16.) Apart from the limited grounds for vacation articulated in the Federal Arbitration Act, *see* 9 U.S.C. § 10, the Third Circuit has recognized certain "additional, nonstatutory bases upon which a reviewing court may vacate an arbitrator's award." *Jeffrey M. Brown Assocs., Inc. v. Allstar Drywall & Acoustics, Inc.*, 195 F. Supp. 2d 681, 684 (E.D. Pa. 2002) (*citing Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 291 n.2 (3d Cir. 2001)). Such additional grounds, which are also extremely limited, include "where the award is in manifest disregard of the law or is not fundamentally rational." *Id.* (citations and quotations omitted). Even then, for an arbitrator's award to be vacated, the record must be completely devoid of any support at all justifying the arbitrator's determinations. *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).

Plaintiff's petition to vacate fails to meet this strict standard. Plaintiff has not presented any statutory basis for vacating paragraph three, but rather, appears to be arguing only that this paragraph is either fundamentally irrational or in manifest disregard of the law. (Pl.'s Pet. at 8.) There is no evidence in the record to support such an assertion. During arbitration, Valu contended that Nolu and Mellor breached the Contribution Agreement by changing the ownership and beneficiary of a life insurance policy on Mellor's life. (*Id.* Ex. A at 10.) Paragraph three's directive that Nolu pay

$1,012,949 to Solus for that life insurance policy simply indicates that the Arbitrator agreed with Valu on this issue. Furthermore, before arriving at the conclusion in paragraph three, the Arbitrator ably summarized the parties' respective arguments. (*Id.* Ex. A at 14.) There is nothing to indicate that, in accepting Valu's legal arguments over Nolu's, the Arbitrator acted in "manifest disregard for the law." *See Allstar*, 195 F. Supp. 2d at 684 (stating that manifest disregard of the law means more than error or misunderstanding with respect to the law, but rather encompasses situations in which arbitrator recognized applicable law, yet chose to ignore it). Moreover, Plaintiff's mere assertion that Valu's arguments were erroneous is not enough for this Court to discount the Arbitrator's determination as "fundamentally irrational." *See McLaughlin, Piven, Vogel, Inc. v. Gross*, 699 F. Supp. 55, 58 (E.D. Pa. 1988) (upholding arbitrator's award of damages even where appellant argued that award had "no relation to economic reality" and alleged facts allowing court to disagree with award).

Accordingly, Plaintiff's petition to vacate paragraph three of the Award is denied.

**C.    The Interim Order**

Finally, Plaintiff asks this Court to confirm the interim order issued by the Arbitrator on March 2, 2004. Although the Federal Arbitration Act provides for instances where a district court may review a final arbitration award, *see* 9 U.S.C. §§ 9-11, "a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Elgart v. Sono-Tek Corp.*, Civ. A. No. 88-7539, 1989 U.S. Dist. LEXIS 13519, at *8, 1989 WL 136280, at *3 (E.D. Pa. Nov. 9, 1989); *see also Travelers Ins. Co. v. Davis*, 490 F.2d 536, 541-42 & n.12 (3d Cir. 1974). The Interim Order is clearly an interlocutory ruling rather than a final award, as it does not "evidence[] the arbitrator['s]

intention to resolve all claims submitted in the demand for arbitration." *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 233 (1st Cir. 2001) (defining finality). The Arbitrator did not express such an intention until July 15, 2004, when he issued his Award. (*See* Pl.'s Pet. Ex. A at 19) ("This Award is in full settlement of all claims and counterclaims submitted to this arbitration.")).

As the Interim Order is interlocutory and this Court has no jurisdiction over it, Plaintiff's petition to confirm the Interim Order is denied.[5]

### IV.   CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Plaintiff's petition, and denies Defendants' cross-petition. Paragraph seven of the July 15, 2004 Arbitration Award is hereby confirmed as modified and Defendants are directed to comply with its provisions. An appropriate Order follows.

---

[5]Regardless, confirmation of the Interim Order is likely moot in light of the temporary restraining order ("TRO") issued by this Court on September 29, 2004. The TRO, which enjoins Ledingham and Valu from engaging in conduct or expending funds outside the ordinary course of Solus's business, grants essentially the same relief as was granted by the Arbitrator in the Interim Order. Stipulation & Order of Sept. 29, 2004.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOLU PLASTICS, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VALU ENGINEERING, INC., et al., | : | No. 04-4325 |
|     Defendants. | : | |
| | : | |
| | : | |

**ORDER**

**AND NOW**, this **12th** day of **October, 2004**, upon consideration of Plaintiff's Petition to Confirm in Part and Vacate in Part the Arbitration Award and Confirm the Stand-Still Order, Defendants' Cross-Petition to Remand in Part the Arbitration Award, the responses thereto, and following a hearing on October 5, 2004, it is hereby **ORDERED** that:

1. Plaintiff's Petition (Document No. 1) is **GRANTED in part** and **DENIED in part**, as follows:

    a. Paragraph seven of the July 15, 2004 Arbitration Award is confirmed as modified herein. Defendants are directed to comply with paragraph seven without further delay, irrespective of Plaintiff's failure to comply with that paragraph's "No Setoff Provision."

    b. In all other respects, Plaintiff's Petition is **DENIED**.

2. Defendants' Cross-Petition (Document No. 6) is **DENIED**.

3. The Clerk of Court is directed to close this case.

**BY THE COURT**

_____
**Berle M. Schiller, J.**